THE DEPARTMENT OF CONSERVATION, Petitioner-Appellant, *v.* KIM CARROLL COX *et al.*, Defendants.—(KIM CARROLL COX, Defendant-Appellee.)

Fifth District    No. 80-129

Opinion filed April 23, 1981.

William J. Scott, Attorney General, of Chicago (William J. Warmoth, Special Assistant Attorney General, and Roy E. Frazier, Jr., Assistant Attorney General, of counsel), for appellant.

Frank J. Weber, of Cox, Phillips & Weber, P. C., of Robinson, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The Department of Conservation of the State of Illinois sought by eminent domain to take the private property here involved for the public purpose of creating a nature preserve. To that end it filed a petition for

condemnation on September 20, 1974. On March 10, 1980, the trial court granted the motion of defendant, Kim Carroll Cox, to dismiss the action for lack of diligent prosecution. From this order of dismissal petitioner appeals.

Defendant's property is part of Chauncey Marsh, proposed to be acquired and dedicated as a nature preserve for scientific and educational use. The petition that was filed on September 20, 1974, named as defendants, "Carroll T. Cox, Alice M. Cox, Caswell J. Crebs, Mary W. Crebs, and Unknown Owners or Persons in Interest." On October 23, 1974, defendants moved to have dismissed all named defendants except Carroll T. Cox, "the only person interested in the land sought to be condemned." Between October 23, 1974, and November 19, 1976, over two years later, the record sheet shows no further activity whatever with regard to this suit.

The entry on the record sheet for November 19, 1976, refers to a "Letter of November 19th 1976 from Special Assistant Attorney General filed as a motion." The letter, addressed to the clerk of the circuit court, states:

"By your letter of October 15, 1976 you have refused our request that the above-captioned matter be placed on the docket for pre-trial conference. However, it is our understanding that Illinois Supreme Court Rule 218(c) provides that an action shall be placed for consideration on the pre-trial calendar on motion of any party. No mention is made in the rule of both parties [sic] having to agree upon a date, as you intimated in your letter referred to above.

If necessary in order to place this cause on the pre-trial calendar, we direct that this letter be considered as a motion and filed with the court file of the above-captioned cause, in which case we do hereby move on behalf of the Department of Conservation that the above-captioned cause be placed on the docket for pre-trial conference.

We further request that you forward to us a certified copy of the Letters of Office issued in the estate of the late Carroll Cox. We do not know your file number for said estate, due to the fact that the attorney for the estate has refused to divulge such information to this office."

Between the date of this letter, November 19, 1976, and March 21, 1978, a period of nearly 1½ years, the record sheet again shows no further activity whatever with regard to this suit.

After this time had passed, petitioner filed, on March 21, 1978, a suggestion of death of Carroll T. Cox and motion to substitute his devisee, Kim Carroll Cox, as defendant. Thereafter, for a period of approximately eight months, until November 13, 1978, the record sheet evidences

considerable activity in this cause. During this period of time those defendants who had no interest in the real property in issue were ordered dismissed, and Kim Carroll Cox was ordered substituted as defendant, replacing the deceased Carroll T. Cox. Defendant filed a cross-petition for damages, caused by the taking, to the remainder of the tract. Various motions were filed by both parties, and certain evidentiary and discovery matters were taken up, most of which need not be discussed here.

Part of the entry in the record sheet for August 21, 1978, states:

> "Amended Petition to be filed by Sept. 1, 1978 and responsive pleading thereto by Sept. 19, 1978. Hearing for preliminary motions not requiring evidence set for Sept. 29, 1978 at 10 AM and hearing on traverse and other evidentiary issues other than damages set for Oct. 10, 1978 at 10 A.M."

On October 17, 1978, upon defendant's motion, the trial court ordered Robert Corrigan, chief of the land acquisition division of the Department of Conservation, to appear for deposition. Ten days later, on October 27, 1978, defendant took his evidence deposition. Shortly thereafter, on November 6, 1978, defendant filed a notice for appearance at trial of three of petitioner's employees, including its Director, David Kenney. Petitioner subsequently moved, on November 13, 1978, to quash the defendant's notice for appearance at trial of David Kenney. That same day the court heard arguments on the motion to quash and, among its rulings, ordered the "[t]raverse hearing continued to allow Def't to take additional Discovery from Petitioner." This is the last entry on the record sheet for over a year, until December 21, 1979, when defendant filed a motion to dismiss for lack of diligent prosecution.

In this motion to dismiss, having referred to the "great lapses of time" that had taken place "in the activity in this file," defendant stated:

> "3. That the last activity in said file has been more than 1 year ago, at which time the Defendant was granted the right to take the discovery deposition of David Kenney, Director, Department of Conservation, State of Illinois.
>
> 4. That William J. Warmoth, Attorney for Petitioner, advised Frank J. Weber, Attorney for Defendant, that dates would be required to be secured in advance for the taking of the discovery deposition of David Kenney, due to his schedule.
>
> 5. That on December 1, 1978, Frank J. Weber, Attorney for Defendant, directed correspondence to William J. Warmoth, Attorney for Petitioner, a copy of which is attached hereto, requesting available dates for the taking of the deposition of David Kenney in Springfield.
>
> 6. That in response to the aforementioned letter of December 1, 1978, William J. Warmoth, Attorney for Petitioner, on December

13, 1978 advised that he could give no dates at which David Kenney would be available for the taking of said deposition, a copy of said letter being attached hereto.

7. That the failure of the Petitioner to prosecute its claim with diligence has unduly prejudiced the Defendant and accordingly, this proceeding should be dismissed with prejudice."

The entire text of the letter dated December 1, 1978, from defendant's attorney to petitioner's is as follows:

"It is my understanding that you were going to advise me of some dates that Director Kenney would be available for the taking of a deposition in Springfield. Have you had any luck in securing those dates for me?"

The entire text of the letter dated December 13, 1978, from petitioner's attorney to defendant's is this:

"In response to your letter of December 1, we must report that the higher-ups in Springfield have apparently not yet made up their minds. We will advise you as soon as we know something further.

Thank you."

Following a hearing on the motion, the trial court on March 10, 1980, dismissed the cause without prejudice, not with prejudice as defendant had requested. In this order the court found:

"1. The date of filing of an Eminent Domain suit is of paramount importance because the date of filing is the date used for evaluation of the subject property.

2. That judicial notice is taken of the fact that property values have increased steadily since the filing of the original petition in this matter and that it would be manifestly unfair for compensation to be fixed as of the date of the filing of the original petition in this matter."

From this order of dimissal without prejudice petitioner appeals.

■■ A court may properly dismiss a condemnation suit for a petitioner's failure to prosecute it with diligence. (*Sanitary District v. Chapin* (1907), 226 Ill. 499, 80 N.E. 1017.) Of dismissal for want of prosecution in condemnation proceedings, the court in *Chapin* said:

"The court ought in any case to be able to see that justice is done. And this case is different from the ordinary suit at law in the fact that the statute contemplates a speedy trial, and for that purpose provides for presenting a petition to a judge in vacation to obviate delays detrimental to the public and the parties. [Citations.] The proceeding is a summary one regulated by statute, and not governed, either as to pleadings or practice, by the rules of the common law." (226 Ill. 499, 502, 80 N.E. 1017, 1018.)

As we observed in *Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, 781, 366 N.E.2d 310, 317-18, *appeal dismissed* (1978), 72 Ill. 2d 287, 381 N.E.2d 241,

> "It is of course true, as the trial court noted, that the value of property taken in a condemnation proceeding is to be determined as of the date the petition for condemnation is filed. [Citations.] Obviously, the application of this rule could cause injury to the landowner where there is a lengthy delay in the prosecution of a condemnation proceeding. It was this potential for abuse and possibility of injury that prompted the Illinois Supreme Court to hold that when a condemning authority institutes a condemnation proceeding it should prosecute the suit with diligence, and that it is liable to the landowner for damages occasioned by a wrongful delay. (*Winkelman v. City of Chicago*, 213 Ill. 360.)"

Citing *Trustees of Schools v. First National Bank* (1971), 49 Ill. 2d 408, 274 N.E.2d 56, and *Department of Public Works and Buildings v. American National Bank & Trust Co.* (1976), 36 Ill. App. 3d 439, 343 N.E.2d 686, we discussed in *Vogt* the emphasis some Illinois authorities have placed upon the obligation of a defendant in a condemnation proceeding to demand a speedy trial in order to charge successfully that the condemning authority has delayed unduly. Of that obligation or requirement we concluded,

> "[S]uch a requirement should not be applied inflexibly without regard to the specific facts of each case. The strict application of that standard to this case would produce great prejudice to the defendants, for they would have been required to proceed to trial without the benefit of re-appraisals of property to be taken and would thus be put to a great strategic disadvantage in proving economic loss. In light of the trial court's finding, we think it is clear that the dismissal of the petition for condemnation should not be made to depend on the defendants' performance of an act which would have been not only useless but also potentially prejudicial." 51 Ill. App. 3d 770, 782, 336 N.E.2d 310, 318-19.

■■ Likewise, in the case at bar the strict application of that standard would result in great prejudice to the defendant. Had the trial court required the defendant to demand a speedy trial, rather than granting the motion to dismiss for lack of diligent prosecution, that demand would have had to come no earlier than 5½ years after the filing of the condemnation petition, a period of very high inflation of which we, as did the trial court, take judicial notice (see *Island Lake Water Co. v. Commerce Com.* (1978), 65 Ill. App. 3d 853, 382 N.E.2d 835; *Lahman v. Gould* (1967), 82 Ill. App. 2d 220, 226 N.E.2d 443). Prejudice to defendant would have been unavoidable given such a span at such a time. Even if the defendant had been expected to make such a demand after being advised of the

state of mind of the "higher-ups in Springfield" and presumably after having waited at least a little while for them to "ma[k]e up their minds," the demand could not have come earlier than about 4½ years from the date of filing of the condemnation petition during the same inflationary conditions. Furthermore, if the docket entry of August 21, 1978, which was made almost four full years after the filing of the condemnation petition, may serve as any guide, the case was not about to be concluded in the near future even then; evidentiary matters with respect to the always crucial issue of damages had not yet been set for consideration, and the difficulties with regard to discovery that arose a few months later were, of course, not yet known. When the trial court was asked to rule upon the motion for dismissal for lack of diligent prosecution almost a year and a half later, the case was, if anything, even further from resolution.

The trial court was necessarily aware that though Carroll Cox's death in all likelihood delayed to some extent the progress of the suit, petitioner knew of his death sometime prior to its letter filed November 19, 1976, but nevertheless failed to file the suggestion of death and motion to substitute defendant or to take any other action for approximately 16 more months. This delay followed the initial two-year period of inactivity after the filing of the petition on September 20, 1974, and before the filing of the letter as a motion on November 19, 1976. These two periods of inactivity together create a total of approximately 3½ years in which essentially all that occurred in this condemnation action was the filing of the petition, defendants' motion to dismiss all but one of them named, and a motion for a pretrial conference.

In this setting petitioner thwarted defendant's diligent discovery efforts and will not now be heard to complain that "the trial court was not justified in dismissing this litigation as a sanction for failure to supply dates for taking a deposition." As the trial court stated in its order, it dismissed the proceeding to prevent injustice, the injustice that would result from fixing compensation as of September 20, 1974. We disagree with petitioner that its failure to cooperate with defendant during discovery "presented at most a breach of professional courtesy." On the contrary, petitioner's failure to cooperate, though neither wilful nor contumacious, posed a dilemma to defendant. Defendant's choice lay between waiting, at petitioner's bidding, until discovery was convenient, thereby suffering increasing pecuniary detriment, or acting affirmatively to proceed to a trial that could, at best, provide defendant inadequate compensation for his property.

We therefore conclude that the trial court properly dismissed the condemnation proceeding without prejudice. Petitioner is at liberty to file another petition for condemnation. The consequence of dismissal and

subsequent filing is the imposition of a different date for the valuation of defendant's property, that is, the date of the filing of any subsequent petition, a result that is under these circumstances just.

Affirmed.

KARNS and HARRISON, JJ., concur.[1]

---

[1] Justice Moses W. Harrison replaced Justice Dorothy W. Spomer, who left after oral argument.